Oh, yes. So the new rule for purposes of this panel is that if you are at the podium, you may, but you are not required to, in any way, shape, or form, take off your mask. But as soon as you sit down, Mr. Lee, put your mask back on. Good morning, and may it please the Court. I'm Sean Lee, Federal Defender to the New York Court of Appellant Jose Pena. The district court correctly ruled that Mr. Pena's two 924K convictions were unconstitutional in violation of Davis. He then correctly granted his motion, his 2255 motion, and correctly vacated those counts. When the Court erred, it wasn't its choice of remedy. Instead of resentencing him in de novo, as required under this Court's decision in Regas and Guintierre, the Court simply vacated the original sentence and then imposed a life term in Mr. Pena's absence and without hearing anything from him. It was submitted as violates the rule of this Court, and that even if de novo was sentencing him. So Regas was on direct appeal and was not a 2255. And obviously we've got a line of cases that involve a 2255 where we appear to have held fast to the rule that even in connection with a vacature of a conviction, so conviction error, it's not de novo. De novo review is not required. So I'm consistent with the language of 2255. So yes, so it's true that Regas and Guintierre cases arose in the context of direct appeals. But the decisions certainly say nothing about limiting the rule to direct appeals. And there have been no cases at this Court that have subsequently limited that rule to direct appeals and not 2255 cases. And I submit that the Raction Act, both the structure of the Raction Act as well as sort of the administrative sort of efficiency promoting assets will apply equally on direct appeal as well as on collaborative litigation. If we were to accept your proposition that it's mandatory de novo resentencing whenever a conviction is vacated on 2255, that's a rule that would apply in circumstances that could benefit the defendant but also add to the defendant's detriment, right? Oh, absolutely. In fact, most of them goes to the defendant's detriment. I mean, most of the resentencings, the de novo resentencings that have gone on since Davis have been at the government's request and have resulted in the judge elevating the sentence under the name. But have we ever said that that is obligatory in a 2255 context? That, again, in a circumstance, let's posit a circumstance where, oh, I don't know. Let's say there had been a jury finding of death here, right, so that you would have life eligibility on the 1958, right? So you could, in theory, if you won, we had a de novo resentencing. The judge could go back and say, well, you know what? I meant to impose a life sentence all the time. This is what he deserves, de novo resentencing. I'm going to give you life in the 1958. The contrary rule, which would afford discretion to the district judge, could, in some circumstances, be more beneficial to the defendant, right? Because in this case, let's posit that had been the situation and Judge Morera had said, well, I opt not to resentence. Sure. It could. Yes. And, you know, I argue the cases, you know, that I have. Oh, I absolutely understand it's in your client's best interest to argue this rule here. But I think I'm just trying to think systemically. It seems to me either rule can be, you know, equally pro-defendant or anti-defendant, as the case may be. So sort of institutionally, why do we have an interest in always requiring de novo resentencing, as opposed to affording some discretion to the district judge to figure out what's most sensible, given the circumstances? I think there's sort of a substantive component to the rule as well as a procedural component. The substantive rationale is that, you know, as Judge Stack wrote in Quinterio, the basic idea is that a sentence is based on a constellation of offenses, right? The ultimate sentence rests on the foundation of the offenses, as indicated by the counts of conviction. And so when we take out a piece of that foundation, right, the constellation is changed. And so in order to sort of have a sentence accurately and appropriately reflect the constellation of offenses and conviction, you know, you have to redo it. You have to sort of rebuild the structure once the foundation is changed. And there's sort of this, I mean, I don't want to call it metaphysical, but sort of the legal, ontological point I like to point out, is that the count, a count is a really significant thing in criminal law. Like prosecutors seek counts of conviction. And I, as a defense lawyer, constantly try to knock out counts, because we know everything rests on those counts. And so once a piece of that count is, it's a big event that happens. But it has always been a big event, right? So before Regas. Well, so this is why I want to restrict the procedure a little bit. This is before Regas and before, at the time of Quinciary, there was a lot of confusion about this, about what the remedy was when either there's sort of a sentence that was faked as opposed to a count. And so courts had to engage in this time-consuming and fact-specific analysis of interrelatedness of the sentences, right? This whole sentencing package document that kept coming. And whether taking a piece would unravel the whole. So this is, it was a time-consuming process. But isn't that still something that, at least at a minimum, we still engage in, in deciding whether we're going to make a limited remand or remand for de novo resentencing? You still do that. So the rule is that, it was the circuit's rule that on direct appeal, right? If you make it a count, you get a resentencing. A clear, bright-line rule. But if you make it a sentence, then it's usually just a sentence correction. But if that sentence was part of a sentencing package or interrelatedness, then you do have to do de novo resentencing. But that's where the confusion often will have an argument about this. Like, are the sentences interrelated? And in fact, under the guidelines, they're always related in some sense. Well, but not always, right? A lot of the time. That's right. The rule sort of avoids this kind of analysis when this significant metaphysical event has happened. A piece of the foundation has been taken away from the sentence. But don't we have the benefit of Judge Marvero's views on this already? In other words, didn't he suggest that it wouldn't matter that this piece has been taken away? Right. So two points to that. He did say that, but this goes to our sort of argument about a piece of discretion. It's because, you know, respectfully, he misunderstood his sentencing authority at a resentence. He believed that it didn't matter, that it would have been just sort of a pointless stretch to do the resentencing because of the three 1958 counts. He has to impose life anyways. But that's not true. Well, let me ask you sort of, I guess, a more precise question. What if a district court judge hypothetically previews for us what might have happened at a resentence, a de novo resentencing, and tells us it wouldn't have mattered? Are you asking us then, even then, for de novo resentencing with the defendant present? It's a bright-line rule. It promotes uniformity, conserves scarce judicial resource, makes sense on a substantive level. And, you know, to that point, in this particular case, you know, I included a transcript of the original sentencing back in 2014 in my appendix, but it's seven pages. There's not a single argument made in litigation. Because everybody was operating under the mistaken belief it was mandatory. Would you be making the same argument if, even under current law, there was a mandatory minimum, let's just say, a mandatory minimum of life on the remaining counts? Or would you agree, I think it's been described somewhere as a ministerial exception. But is that really an exception, you know, to a rule? Because that's one way to view it, right, is that we have a rule of de novo sentencing, but then we have exceptions. Or is a better way to view it as that is simply one factor that can be considered by the district court in the exercise of its discretion when choosing among the remedies, say, de novo resentencing or the fourth clause of 2255, which textually allows a district court to, I think it was, correct a sentence. Right, sure. So... This Court of Powers addressed that situation and described it as an exception. Yeah. And some think of it and describe this idea that, well, you know, the rule is that you're given de novo resentencing. But, you know, if the judge is required to impose the same sentence anyway, then maybe that's an exception because it's strictly ministerial. So that's how I look at it. And that doesn't apply here. I don't think the government really even believes this. Let's say that we went back to the original sentencing in this case. I don't think the government, if it were raised, but on the 1958 counts, what's the court's sentencing power on the 1958 counts? And what are the jury's findings on that? I don't think the government would say he gets life on this. I think even the government would admit that he was only convicted of the basic offense. If you had this de novo resentencing, you would say... But if you had the original sentencing, it's the same thing, right? I think the government would have, you can't just bar him. The judge can't look at the evidence or borrow a piece from the 1954 JBI to say, well, that's good enough on the 1958 counts for the death results. Your argument is that it may be okay for the court to do that when you're doing a harmless error analysis. But if you're in de novo resentencing land, you can't do that sort of looking to what the jury would have done if. The judge's task of sentencing is just to follow the law, not to commit harmless error. And so there's this category mistake that goes throughout Judge Induro's thinking and the government's arguments that, oh, well, there's no need for resentencing because it's harmless error. I'm not saying this. There's no error in the conditions. The conditions are just fine, right? He was convicted of the basic 1958 offenses. The error is the sentences. But those sentences are vacated upon a de novo resentencing. De novo resentencing, as Justice Gorsuch pointed out, it's all counts. It's a new sentencing on all counts. Would you just very briefly tell me how we can grapple with Savoca? I think I'm pronouncing that correctly, which follows Regas. It had nothing to do with a vacated account. It was a typical issue where the claim under 2255 was an IAC claim based on failure to be informed of the notice of appeal. Notice of appeal. Something like that. So that's how you distinguished it. That's right. It's not a vacated account. It's not at all. It was just a notice of appeal issue. And usually—and I speak only here for myself because I have a view of embanks—but usually a panel is not authorized to overturn a prior panel decision without an embank process. That's right. And what you are telling us is that Regas silently overturned two prior cases from 1997. No, no. You mean Bordeaux? Yes. No, no, no. Those decisions are—so this is what I'm saying. So you can distinguish those decisions as well? Oh, yes, yes. Okay. So first of all, in those cases, the whole thing that we ruled is actually inconsistent with what we're saying. Okay? I mean, the ultimate outcome is the same, right? Is that the government wanted a no vote resentencing and the defendant— Well, it's flipped. Correct. The defendant wanted a limited resentencing on a 2235, and the government wanted a no vote resentencing on the remaining half. Okay? But the ultimate whole thing, which is that the government can't reasonably say no vote, is perfectly consistent with the Regas rule. That's the first point. But to your— Can versus must. Can versus must. That's right. So there is sort of this kind of inconsistency about it. But I would say the reason for that— Isn't that the entire reason that we're here? You're asking us for a must rule. That's right. We already have a can rule. But the—respectfully, Your Honor, but, you know, the temporal context here is important. This is—we go back to the Quincy area of Regas finding cases. Quincy area comes out in 2002, and Gordillo is in the other case of 1997. During that—before all that time, as I said earlier, it was sort of a big mess. There was not a lot of clarity about the court's remedial power upon vacater of a count or a sentence. There was all—it was sort of unclear. That's why we had—this court had to settle the issue. There was unclarity on the issue. So our view is not that Regas is inconsistent with those. It's that Regas finally, as Regas said, will resolve any ambiguity today. Regas, that panel, settled the dispute. And so that sort of uncertainty that occurred back then was settled in Regas. So you want us to be the Regas to Gordillos. I'm sorry, what? You want us to be the Regas to Gordillos. Regas is the quintiary. You're the more Regas. You say it applies across the board, no ambiguity, right-line rule, and it really extinguished whatever ambiguity or distinction. It's resolved the ambiguity, as Ron said in that as well. If I said that, I do need to—I would like to respond, if I could, to the government's 28-J letter. Yes, I'll give you a minute. It's simply about how the position that I am asking the court to apply to, to take, is inconsistent with decisions from several other circuits. And I guess the simple response to that is I don't believe those circuits follow the Regas rule either. And so this is not a circuit. This is just sort of a disagreement among co-legal circuits about sort of a judicial administration, about sort of a remedial component after a legal rule. And so I think it's not the sort of thing where disagreement among the circuits is that big of a deal. It's that this court decided in Regas to balance the interests of the parties and the court in a particular way and has followed that rule. And the fact that other circuits choose not to follow it is just fine. Well, we don't likely create circuit splits. I mean, we do. It's not really a circuit split. It's just a difference in judicial administration. That's very easy for you to say, Mr. Lee, but I appreciate that. I would also say this, Your Honor. The final thing I would say about that is that even under those circuits' rule, we should prevail because there's an abuse of discretion in the nine that they normally sentence in here. Well, that's a separate right. That's a separate issue. But it's a part of our argument. No, I understand. But that is not a circuit split issue. Even under that rule, the idea is that those courts' rule is that if the district court would have to engage in a lot of exercising of discretion in imposing the correct sentence, then that should be none of the defendant's presence and become what they normally sentence. Okay. I've kept you well past your time. You've reserved some rebuttal time. Thank you. So we'll hear from Mr. Rothschild. May it please the Court. My name is Stan Rothschild. I'm an assistant United States attorney in the Southern District of New York. I represent the United States on this appeal, and I represented the United States in the most recent habeas proceeding in the district court. This court should affirm the amended judgment because Judge Marrero was not required to conduct a plenary resentencing here, nor did Judge Marrero. So you heard Mr. Lee talk about Regas and describe the way in which Regas seems to have resolved the ambiguity or the tension that existed prior to Regas with Quittieri and then before that in 1997 with Godsell and the other case. Can you just address that directly, please? Yes, Your Honor. Regas did not arise in the 2255 context, and that is very important here because 2255 expressly provides the district court discretion to choose among four remedial options as it may appear appropriate. So Regas did not need to grapple with that statutory text. And to impose a mandatory de novo resentencing rule here would completely read out of the statute the option to correct the sentence if that is what appears appropriate under the circumstances. As well, the rule requiring de novo resentencing for any negator would conflict with interests that are important in the 2255 context, but that are not as present in the direct appeal context, including finality, efficient allocation of resources, the aversion to retry issues long after the underlying events. Those interests are reflected in the narrow scope of the case. What is it about what Mr. Lee is proposing that would, in an unfair or inadministrable way, really undermine finality? I mean, we have the problem here is that you have a conviction that is erased, right? So there's already a problem. And usually in the ordinary course, you're right, that ABS proceedings, we really consider this issue of finality. But take me through that. How would I write an opinion about finality in a context where the conviction is erased? What does it matter anymore? Your Honor, this would arise when there are multiple counts of conviction such that when one is erased, something remains to be done with the other counts, the counts that remain in place. And the harm to finality there is to require a district court to engage in what in many cases, in this case, would be a pointless exercise of ordering a new PSR, calculating the guidelines. Wait a minute. Why is it pointless, though? I mean, it's not pointless for the defendant, right? He's pretty keen on the fact that he's going to get a much lower sentence. I mean, my understanding here is he's been capped at 30, right? He could get 10 years on each of the three counts? That's not correct, Your Honor. Here the counts of conviction that remain in place carry mandatory life terms. Well, if we accepted his view, right? I mean, he's saying that you don't have the elements. What I'm saying is that that's what he's going for, not what you would argue on the other side. Your Honor, to take a hypothetical case where the remaining counts of conviction do not carry mandatory terms, it may well be that in that case, under the circumstances, depending on what the circumstances are, that a plenary resentencing is the appropriate course, and the statute gives the district court the discretion to order a plenary resentencing. That's exactly what this Court proved of in Portos. That's the discretion point, yes. Exactly. In Portos and Rodriguez. So if, in terms of the sequence of issues here that I guess you would suggest we would need to determine this, would you suggest then that, number one, we would decide this point about whether or not de novo resentencing is mandatory, and let's say we came down on your side and said no, that it's the flip side of Gordil's. Gordil's afforded discretion, but that's it. Would you then say that we need to consider the next point of whether there's a chance that the defendant might get a lower sentence had there been a de novo resentencing? Let's say we reviewed the 1958 issue, and let's say we agreed with the defendant hypothetically and said no, there's no mandatory life if there were to be de novo resentencing. Would it be your view then that it would have been an abusive discretion not to give a de novo resentencing? Your Honor, that's a much harder case. That's why I'm asking. It may well – this Court reviews the district court's exercise of its discretion under the remedial provisions for abusive discretion, and there may well be instances where the district court abuses its discretion by declining to engage in a binary of sentences. So how do we measure that? I guess my question is if we get to the point where it's discretionary on the part of the district court, presumably it's still reviewable for an abusive discretion, what's our – what are our guideposts for that? Well, Your Honor, I think that this Court does not need to reach that issue here because here we have mandatory – Assume we do. Assume that's an issue, Your Honor. I think that the inquiry is very similar to one that the Court undertook in Burles and Rodriguez, which is to say is this – is the sentence here truly a bundle? Would it be unraveled by the removal of one conviction such that it would be unfair not to have a de novo resentencing on the remaining counts? And on that, do you temporarily view the unbundling as measured at the time of the original sentencing where hypothetically, let's say everyone – let's say there's been a change in the law, and at the time of the original sentencing a mandatory minimum on one of these remaining claims was perfectly valid, but if there were to be a resentencing and accept the premise of my question, that mandatory minimum would no longer apply. So would we be viewing the unraveling at the original time of sentencing or at the time of the hypothetical resentencing? I think I understand the question, and I don't at all mean to fight the hypothetical, but I will say that the procedural context matters crucially because, like here, if we're in a 2255 context, if certain arguments have been waived on direct appeal, if this Court has already issued a denial of certificate of appealability in a prior 2255 context, in other words, if issues have been litigated, I think that impacts the analysis as to what is available. So how do you deal with the asymmetry of Gordilles where, hypothetically, the government gets – the government benefits from a resentencing advocating for a longer sentence based on, I don't know what, the development of additional evidence showing that the person, I don't know, had committed more crimes and the evidence wasn't available at the initial sentencing. The government never took an appeal. It was all water under the bridge. And it's only the fortuity of a de novo resentencing that brings this all to life. It's really a windfall of some – in some respects for the government. It reopens something otherwise final. Isn't that really the mirror image of this, that, yeah, that's – it was all final, it was water under the bridge, but through some fortuity, everything's open again? What's lacking in that parallel? Your Honor, I think that the – either rule applies equally advantageously or disadvantageously to the parties depending on the circumstances. So that there will be circumstances when the defendant can point to intervening changes or new information. New evidence. Yeah. New evidence, yes. New evidence. Correct. That will convince a district court that a plenary resentencing is appropriate. But that's not – that's not this case. I see my time is out. Anyone who wants to ask further questions will rest on our brief and respectfully request that the defense be adjourned. Thank you. Actually, with permission of the presenter, can I just ask you to address the 1958 question? I understand the argument that when we're engaging in harmless error or plain error, which is a variant review, we can ask – we can effectively borrow, let's say, the jury's findings on one count for purposes of another, because what we're asking is a counterfactual question. Had the jury been properly instructed on an element, would the result have been any different? But I understand the defense argument here to be different in saying when you walk into a de novo resentencing, again, assuming Judge Moreira were to engage in a de novo resentencing, he wouldn't have that option. He wouldn't be asking, did I make a mistake in the past? Simply the slate is wiped clean. He has to go forward, and he'd have to ask what elements he's got. What's wrong with the defense's argument there? So, Your Honor, what's wrong with that argument is that in a de novo resentencing, the sentences are rightfully what you say, but the convictions remain in place. And what this defendant was convicted of on the three verdict for higher counts was three convictions that carry mandatory life terms. If you look at the indictment, he was charged with death resulting. If you look at the judgment, there's a judgment of conviction for death resulting. Well, we look at the elements, right? Correct me if I'm wrong, but I thought that the instructions specifically told the jury they need not find that death resulted in order to return the 1958 convictions and that the only reason we know the jury concluded death resulted is because they were so instructed on the 1924 convictions. Do I have the record right? That's a fair representation of the record, Your Honor. So how can a judge sentence to life based on an element in a count that was not charged to the jury? Well, Your Honor, again, what we propose that the court should look at in looking at the conviction is the prior judgment, the indictment, and here, importantly, the procedural history of the case. This argument was waived on direct appeal. This court denied us the ability. And even if you reach the question of whether this made any difference at all, it was harmless for the reasons that Your Honor has already— Well, but no, I'm trying to say, assuming we're not in harmless error land and we're on square one land, as if we were back at the original sentencing date, why would the judge be allowed to look at an element that the jury found in a different count? How much you may think it is a flawed conviction. I think that's right, Your Honor. It's got to be the argument. It's available for that conviction or that sentence to be challenged that way. That must be the argument. Okay. Thank you, Your Honor. Thank you. Mr. Lee? Just a few quick points. First of all, the government just said there just can't be, right? I mean, I've never been to a—I can't imagine going to a sentencing and the judge saying, well, you know, I know you got convicted of the base offense, but, you know, I look at the evidence of the other counts, and, you know, that's good enough. I'm just going to act as if you were convicted of the aggregate offense. That just cannot be. Well, what if there were a different flaw in the jury instructions? Let's say there was a defective—oh, I don't know—defective mens rea instruction, and you said, oh, my gosh, the 1958 count, it's nonsense. There's an intervening decision. The Second Circuit says it's nonsense. What's the difference between that and the absence of the finding of an element? I'm not sure I understand. Well, you're saying that we don't have an element about finding that the death resulted, right? Oh, I see. So the difference is that he was properly convicted of an offense. I mean, it's just a—1958 is structured exactly like 841, right? There's like a base offense, like a B1C with no quantity, and then there's a middle one, and then there's the highest, and in 1958, there's the base offense that's 10 years max, and then the middle one is the 20-year max, the personal injury problems, and then the aggregate, the most aggregate, which I'm sure is the cost of life in the mandatory minimum, death or life, right? And so the fact that the jury was only asked to find him guilty of the base offense, and so he was properly convicted. There's nothing wrong with the conviction. I keep saying this. It's just the sentence, the penalty that was imposed on the conviction is the error. Well, that depends on, I think, then, your characterization of this as a sentencing error and not a conviction error. Well, that's—yes, on those counts. Right. But I'm not—I have not—we have never raised that as an independent claim in this litigation. It's all about the 924Js. It's all—it's the—it's the vacature of those convictions that brings us here today. That's right. And that puts it in the biggest land in New Jersey. Because our view is that the vacature of those counts requires the vacature of the sentences on all counts. And so we're back to, you know, the restart. And, you know, even this language of harmless error, the government keeps talking about harmless error. I mean, that means that there was an error, but it's a sentencing count. You know, did Regas grapple—I mean, Mr. Rothschild started with the fact that Regas was a case on direct appeal, which was my first question to you. Yes. But Regas doesn't grapple at all—doesn't need to grapple at all with the text of 2255. So there's a— Yes. —arguably compelling textual argument that you're resisting. Well, no, Your Honor, so the issue—there's no doubt the district courts have broad remedial authority under 2255. But, you know, I don't need to tell the Court that this Court has incredibly broad remedial authority under 2106. I've seen this Court do all sorts of stuff. You know, you can do whatever you want, right? Oh, no, Mr. Lee. Let's hope not. You are terribly wrong about that. This Court, you know, last year, you know, upheld the sentence, right, but nonetheless remanded for the judge. So they're terribly wrong, but still we don't really like the way you—you know, that there's a weird history of the case. And so— There are certain—what you're getting at is that there are certain inherent powers, as I like to describe it, that we have to correct certain errors. That's probably correct. But here we've got a text that suggests that in the 2255 context, which Regas did not—which our colleagues in Regas did not have to grapple with, a district court judge just per se, across the board, conviction error, sentencing error, however you want to describe it, has discretion. Sure. To not conduct a de novo resentencing. But this Court has the same discretion not to adopt a Regas rule, right? And so, you know, the fact that broad remedial authority is not inconsistent with the narrow categorical rule that says upon the occurrence of a specific event— But we can't just make up that rule because we think it's helpful. I mean, we have to think it's legally compelled, right? I mean, we're not just cooking up random rules to make our lives easy. And I understand Breitbart line rules are easier to follow. But that's why we have lots of decisions that are entrusted to the discretion of a district judge, even though that requires more work by everybody. But that doesn't mean we can just make up rules and get rid of discretion when we want to. But, you know, I think it's the same rationale that led to the categorical in Regas, right? That Regas binds subsequent panels about, you know, a subsequent panel had just as broad remedial authority as a district court on 25th. But now they're back. And they can't—you know, when they vacate a count— Is there— I told you about— To go back, and I should know the answer to this, but I don't, with respect to the circuit split, so to speak, is there another circuit that agrees with you? I am not aware of it. Okay. I guess the last thing I want to point out is that, you know, there's this talk about ordeals. But, again, you know, one of the things that the court of ordeals rejects, right, is that this—so, again, the situation is split. It was the defendant who said, okay, I know that on the direct appeal, you can order a bailiff on resentencing on the unpaid, but 20 to 55 is different in this matter. And, you know, this court specifically rejected that. And says, you know, we don't see any reason. Why should there be a distinction? It's, you know, it's a vacate of an account, changes the consolation offenses, undermines the appropriateness of the sentence, so we order a resentence. So this distinction that the government is trying to draw wasn't trusted in the court of ordeals, and they rejected it. And so I ask the court to do the same thing. Simply to apply the remiss rule to the specific context of a vacate account, a significant legal event for Daneville. Thank you very much. We'll reserve decision.